UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| AMY BIGGS on behalf of DKGB,<br>       Plaintiff,<br><br>       v.<br><br>KILOLO KIJAKAZI, Acting Commissioner of<br>Social Security,<br>       Defendant. | )<br>)<br>)<br>)  CAUSE NO.: 1:21-CV-97-JPK<br>)<br>)<br>)<br>) |

## OPINION AND ORDER

This matter is before the Court on a Complaint [DE 1], and Plaintiff's Opening Brief [DE 23]. Plaintiff Amy Biggs, on behalf of her daughter, minor claimant DKGB, requests that the July 14, 2020 decision of the Administrative Law Judge (ALJ) denying her claims for disability benefits be reversed. For the following reasons, the Court grants Plaintiff's request and remands to the agency for further proceedings.

## PROCEDURAL BACKGROUND

On February 11, 2019, Plaintiff applied for supplemental security income on behalf of DKGB, alleging that DKGB had been disabled since her birth in 2009. Plaintiff's application was denied initially and on reconsideration. Plaintiff requested a hearing, which was held before an Administrative Law Judge (ALJ) on May 4, 2020. On July 14, 2020, the ALJ issued an unfavorable decision, making the following findings[1]:

> 1.   The claimant was born [in 2009]. Therefore, she was a school-age child on February 11, 2019, the date [the] application was filed, and is currently a school-age child.
>
> 2.   The claimant had not engaged in substantial gainful activity since February 11, 2019, the application date.

---

[1] These findings correspond to the bolded findings throughout the ALJ's decision. Internal citations to the Code of Federal Regulations are omitted.

    3.    The claimant has the following severe impairments: epilepsy/seizure disorder, attention deficit hyperactivity disorder (ADHD), anxiety disorder, impulse control disorders, gliomas, neurofibromatosis type I, and headaches.

    4.    The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

    5.    The claimant does not have an impairment or combination of impairments that functionally equals the severity of the listings.

    6.    …[T]he claimant has not been disabled, as defined in the Social Security Act, since February 11, 2019.

(AR 16-24)[2].

Plaintiff appealed, but the Appeals Council denied review. (AR 1-3). Plaintiff then filed this civil action seeking review of the Agency's decision pursuant to 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

The Social Security Act authorizes judicial review of the agency's final decision. 42 U.S.C. § 405(g). The question before the Court is not whether the claimant is in fact disabled, but whether the ALJ's decision "applies the correct legal standard and is supported by substantial evidence." *Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017); 42 U.S.C. § 405(g). Under § 405(g), the Court must accept the Commissioner's factual findings as conclusive if they are supported by substantial evidence, which is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moore v. Colvin*, 743 F.3d 1118, 1120-21 (7th Cir. 2014) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

---

[2] Page numbers in the Administrative Record (AR) refer to the page numbers assigned by the filer, which are found on the lower right corner of the page, and not the page numbers assigned by the Court's CM/ECF system.

The Court reviews the entire administrative record but does not re-weigh the evidence, resolve conflicts in evidence, or substitute its judgment for that of the ALJ. *See McKinzey v. Astrue*, 641 F.3d 884, 890 (7th Cir. 2011) (citing *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). However, "if the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)). At a minimum, an ALJ must articulate her analysis of the evidence to allow the reviewing court to trace the path of his reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002). The ALJ also has a basic obligation to develop a full and fair record and "must build an accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings." *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014).

## DISABILITY STANDARD

To be considered disabled, a child must have a "physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(1). To evaluate claims for supplemental security income, the Commissioner looks to whether the minor claimant has a medically determinable severe impairment or combination of impairments that meets, medically equals, or functionally equals the requirements of an impairment listed in the regulations. *Id.*; 20 C.F.R. § 416.926a(a).

In this case, Plaintiff specifically objects to the ALJ's analysis of functional equivalence. To assess functional equivalence, the ALJ evaluates six different domains of functioning: acquiring and using information, attending and completing tasks, interacting and relating with

others, moving about and manipulating objects, caring for oneself, and health and physical well-being. *Id*. To be found disabled, the claimant must have an "extreme" limitation in one domain or a "marked" limitation in two domains, relative to the agency's expectations for children in the claimant's age group. *Id.*

## ANALYSIS

DKGB was a "school-age child" (aged 6-12) from the date of the application through the date of the ALJ's decision. (AR 16). The ALJ found that DKGB suffered from seizures, anxiety, ADHD, impulse control disorders, and headaches, among other ailments. *Id*. The ALJ found that she did not meet or medically equal any of the applicable listings (AR 16-17), and Plaintiff does not challenge that finding. Next, the ALJ considered whether DKGB's impairments could functionally equal a listing, by assessing each of the six domains. The ALJ found that DKGB had a "marked" limitation in health and physical well-being, "no limitation" in interacting and relating with others, and "less than a marked limitation" in the remaining four domains, compared to other children in the same age range.[3] (AR 19). Because there were no extreme limitations, and fewer than two marked limitations, the ALJ found DKGB not disabled. Plaintiff contests the ALJ's finding in the domain of "caring for yourself," arguing that DKGB has at least a "marked" limitation, which would have compelled a finding of disability.

### I. "Caring for Yourself"

The domain of caring for yourself measures "how well you maintain a healthy emotional and physical state, including how well you get your physical and emotional wants and needs met in appropriate ways; how you cope with stress and changes in your environment; and whether you

---

[3] A "marked" limitation means the "impairment interferes seriously with your ability to independently initiate, sustain, or complete activities . . . the equivalent of the functioning we would expect to find on standardized testing with scores that are at least two, but less than three, standard deviations below the mean." An "extreme" limitation is the equivalent of three or more standard deviations below the mean. § 416.926a(e)(2)-(3).

take care of your own health, possessions, and living area." § 416.926a(k). For school-age children, such as DKGB, the agency describes "typical" functioning as follows:

> You should be independent in most day-to-day activities (e.g., dressing yourself, bathing yourself), although you may still need to be reminded sometimes to do these routinely. You should begin to recognize that you are competent in doing some activities and that you have difficulty with others. You should be able to identify those circumstances when you feel good about yourself and when you feel bad. You should begin to develop understanding of what is right and wrong, and what is acceptable and unacceptable behavior. You should begin to demonstrate consistent control over your behavior, and you should be able to avoid behaviors that are unsafe or otherwise not good for you. You should begin to imitate more of the behavior of adults you know.

§ 416.926a(k)(2)(iv).

Having summarized the medical evidence, reports from DKGB's school, and the testimony of DKGB and her mother, the ALJ found that DKGB had less than a marked limitation in caring for herself:

> [DKGB] testified she has sloppy handwriting and trouble spelling. She reported being able to tell time on a digital clock and spell short words. She reported being able to add and subtract. She said she finishes her homework. The claimant stated it is hard for her to keep up when walking or running. She said she can kind of throw a ball. She denied participating in sports and said she could not ride a bike, does not jump rope, does not swim, and does not dance. She indicated she can hold a pencil but uses a gripper to help her write neater. She said she needs help bathing. She indicated she cannot wash her hair. She reported being able to use utensils, scissors, zippers, buttons, and shoelaces. The claimant's mother reported she is physically slow and has to hold onto something when climbing stairs. However, the claimant's doctor allowed her to play on playground equipment with stairs and a railing, swim with one on one supervision, and skateboard or cycle with a helmet. The claimant has trouble with anxiety and picking at her skin, but medication helped. Neuropsychologist Elizabeth Begyn, Ph.D. noted the claimant appeared sad and did not demonstrate much expression in her face. However, the claimant was well groomed and appropriately dressed. In an August school report, the claimant's biggest struggle was organization. The claimant's teacher noted in September 2019 the claimant was functioning in school, was very polite, was a great kid, worked hard, and had a good heart. The claimant's teacher stated she was able to stop crying if she takes a moment to talk about her problems, and crying was not impeding her functioning at school.

(AR 22-23 (internal citations omitted)).

Earlier in the decision[4], the ALJ had discussed DKGB's history of "pick[ing] at her skin," resulting in bleeding and bruises. The ALJ found that the frequency of the skin picking varied over time, but ultimately, "[w]ith medication changes, the claimant's anxiety and skin picking improved by December 2019." (AR 22).

Plaintiff argues that many of the ALJ's findings are not relevant to DKGB's self-care. (Pl. Br. 19-22). For example, the ALJ recited much of DKGB's testimony about her performance at school (sloppy handwriting, trouble spelling, but able to add and subtract, and finish her homework) and her physical abilities (could not jump rope, swim, or dance, but could use utensils, scissors, zippers, buttons, and shoelaces). (*See* AR 22-23). Although the ALJ did not explain their relevance, these findings could show that DKGB "recognize[d] that [she was] competent in doing some activities and [had] difficulty with others," which is an element of self-care for children her age. *See* § 416.926a(k)(2)(iv). Even if this discussion was not directly on point, it does not appear that the ALJ made any improper inference about DKGB's self-care from those findings.

More directly relevant was DKGB's testimony that she "needs help bathing" and "cannot wash her hair." The regulations state that a school-age child should be able to bathe independently. § 416.926a(k)(2)(iv). The ALJ did not discuss the bathing problem in any greater detail, but noted that DKGB appeared "well groomed and appropriately dressed" at an appointment with a neuropsychologist (AR 23 citing AR 1008). However, there was no indication that DKGB had groomed herself independently for this appointment; if this was note was seen as inconsistent with DKGB's testimony, the ALJ did not explicitly say so.

---

[4] The findings of the six domains overlap somewhat, and the Court considers all relevant findings throughout the decision in assessing whether the findings about "caring for yourself" were adequately explained. *See Wright on behalf of IRC v. Kijakazi*, No. 3:19-CV-841-TLS, 2022 WL 1090629, at *3 (N.D. Ind. Apr. 12, 2022) (citing *Rice v. Barnhart*, 384 F.3d 363, 370 n.5 (7th Cir. 2004) ("it would be a needless formality to have the ALJ repeat substantially similar factual analyses" in different parts of the decision)).

The bathing issue is not dispositive in itself: a failure to bathe yourself "do[es] not necessarily describe a 'marked' or 'extreme' limitation." § 416.926a(k)(3). Put differently, not every school-age child with bathing issues is "operating two . . . standard deviations below the mean." § 416.926a(e)(2). Perhaps the ALJ believed DKGB's bathing and grooming were better than she portrayed them[5], but the decision did not explain that. It is not clear why DKGB's bathing difficulties supported a "less than marked" limitation in self-care, rather than a more severe limitation. *Giles ex rel. Giles v. Astrue*, 483 F.3d 483, 488 (7th Cir. 2007) ("We require an explanation of *why* strong evidence favorable to the plaintiff is overcome by the [contrary] evidence.").

The ALJ's analysis of Plaintiff's "skin picking" behavior was also lacking and requires remand. The regulations explicitly recognize that "self-injurious behavior" is a limitation on self-care. § 416.926a(k)(3)(iv); *see also* § 416.926a(k)(2)(iv) (at age 6-12, "[y]ou should begin to demonstrate consistent control over your behavior, and you should be able to avoid behaviors that are unsafe or otherwise not good for you"). The ALJ acknowledged that DKGB was "picking at her skin," which at various times caused bruising and bleeding, but this underplayed the extent of the problem. DKGB was reported to "pick[] on her moles, stating that she does not like her moles on her skin" (AR 330); bite her fingernails and toenails (AR 334); "dig" at her ears (AR 444); and try to cut her legs and arms with scissors (AR 1037).

The ALJ found that "with medication changes, the . . . skin picking improved by December 2019," citing generally to a psychiatrist's treatment notes. (AR 22 citing AR 439-466). Those notes show that, on December 3, 2019, DKGB "report[ed] that the picking on her skin has gone down.

---

[5] Neither Plaintiff's brief nor the ALJ's decision referenced DKGB's mother's testimony that DKGB "loses control of her bladder" during seizures (AR 45), which could be seen as another potential limitation on her self-care. *See* § 416.926a(k)(1)(ii) ("Caring for yourself includes using your independence and competence to meet your physical needs, such as . . . toileting . . . appropriately for your age.").

She is also not picking at her scabs as much, but she still does this when she is anxious." (AR 455). In February 2020, she was "not pick[ing] at her skin as much, but she still pick[ed] at her fingertips and toenails." (AR 461). Her mother testified at the May 4, 2020 hearing that the skin, fingernail and toenail picking was ongoing. (AR 44 ("It seems like every day, she's doing it.")).

Despite the testimony of DKGB's mother, the ALJ's statement that the problem had improved was supported by the medical record. However, even the most charitable reading of the record suggests that the problem was still ongoing, just less than before. (*See* AR 455, 461). The ALJ seemed to assume that, because DKGB's condition was improving, it was not a marked limitation on her self-care. But the question is not whether DKGB was improving, but how she was functioning relative to other children her age. *Michelle J. o/b/o ZAJ v. Comm'r of Soc. Sec.*, No. 3:21-CV-00178-NJR, 2022 WL 3153967, at *6 (S.D. Ill. Aug. 8, 2022) ("The ALJ believed ZAJ's accommodations, therapy, and treatment were helping her to improve, but failed to describe what this meant for ZAJ's functioning relative to her non-disabled peers."); *Oliver on behalf of D.O. v. Kijakazi*, No. 20 C 4982, 2021 WL 5299788, at *6 (N.D. Ill. Nov. 15, 2021) ("Despite any improvement that D.O. exhibits when he is on medication, the ALJ did not explain how D.O. has reached the level of function that a non-impaired child of his age range should have in this domain.").

Finally, the ALJ summarized a teacher's report as saying that DKGB "was functioning in school, was very polite, was a great kid, worked hard . . . had a good heart . . . and was able to stop crying if she takes a moment to talk about her problems." (AR 23). Although there is no record citation, it appears the ALJ was referring to the report of a meeting regarding DKGB's Section 504 Plan (AR 961-62). If so, the ALJ's description was not exactly right – the teacher did not say that DKGB would stop crying, only that "she is usually able to process the situation" and

8

eventually move onto the next task if a teacher consoles her. (AR 961). The school staff also sought to address DKGB's "fidgety" behavior by putting Velcro under her desk to give her an alternative to picking her skin. (*See* AR 962 ("If this works as a replacement behavior, we can keep it. If not, we can try something new.")). These accommodations are themselves evidence of DKGB's limitations. *See* SSR 09-1p, 2009 WL 396031, at *7 (Feb. 17, 2009) ("The more help or support of any kind that a child receives beyond what would be expected for children the same age without impairments, the less independent the child is in functioning, and the more severe we will find the limitation to be."). The fact that DKGB could "function" in school with help, while relevant, does not show she was capable of age-appropriate self-care. § 416.926a(b)(7)(iv) ("The fact that you attend school does not mean that you are not disabled . . . [G]ood performance in a special education setting does not mean that you are functioning at the same level as other children your age who do not have impairments."). Therefore, on remand, the ALJ needs to not just list the instances where DKGB performed well, but also explain why that evidence does or does not outweigh the evidence of her limitations. *See Pamela B. v. Saul*, No. 2:20-CV-340, 2021 WL 2411391, at *5 (N.D. Ind. June 14, 2021) ("[T]he ALJ summarized evidence both in support of and against a finding of disability. However . . . the ALJ was required to explain why evidence of normal findings were more probative than evidence supporting a finding of disability.").

**II.** **"Interacting and Relating with Others"**

Although not addressed in Plaintiff's brief, the Court believes it may be wise for the ALJ to reassess the domain of "interacting and relating with others" on remand. Interacting and relating with others means "how well you initiate and sustain emotional connections with others, develop and use the language of your community, cooperate with others, comply with rules, respond to criticism, and respect and take care of the possessions of others." § 416.926a(i). The ALJ found

9

that Plaintiff had "no limitation" in this area. (AR 23). But DKGB testified that she did not have any friends (AR 34, *see also* AR 307). She cried frequently at school (AR 961), and was "anxious in the classroom [because] everyone is sitting to[o] close to each other." (AR 325). She was reported to bully, yell, and become aggressive with other children. (AR 305-06). In her school records, a guidance counselor claimed that DKGB's mother "reported that doctors changed [DKGB's] seizure medication because she was threatening" to harm another child. (AR 1037).

In finding that DKGB had "no limitation" in interacting and relating with others, the ALJ relied heavily on reports that she presented well in examinations with various doctors.[6] But normal behavior for a brief period in a controlled setting such as a doctor's appointment is not necessarily probative of how a person will behave for the rest of the day. *See, e.g., Kangail v. Barnhart*, 454 F.3d 627, 629 (7th Cir. 2006) (finding "no contradiction" between reports of a claimant's mental illness and the observation "that she was behaving pretty normally during her office visits"); *see also Miles ex rel. J.M. v. Astrue*, 775 F. Supp. 2d 715, 729 (S.D.N.Y. 2011) (the fact that a child "was described as cooperative and polite" with adults was not probative as to interacting and relating with others). The ALJ did note that DKGB had a "peer helper" at school and was able to talk to her teachers. (AR 23). But these facts do not constitute a logical bridge to the conclusion that DKGB had *no* limitation in interacting and relating with others. On remand, the ALJ should re-assess the evidence and provide a clearer explanation for the findings in that domain.

---

[6] *See* AR 23 ("At a February 2019 Park Center examination, the claimant reported difficulty in public places but was cooperative during the examination. At a Riley Hospital examination that same month, the claimant was cooperative, very pleasant, and interactive." . . . "[Another] examiner described the claimant as sweet and socially related, indicated she readily participated in the interview, was engaged, cooperative, and interactive, and had good eye contact." . . . "[A neurologist reported DKGB] was concrete for her age but was otherwise socially appropriate.") (internal citations omitted)).

## CONCLUSION

Based on the foregoing, the Court hereby **GRANTS in part** the relief sought in Plaintiff's Opening Brief [DE 23] and **REMANDS** the decision of the Commissioner of the Social Security Administration. The Court **DIRECTS** the Clerk of Court to **ENTER JUDGMENT** in favor of Plaintiff and against Defendant.

So ORDERED this 15th day of September, 2022.

s/ Joshua P. Kolar
MAGISTRATE JUDGE JOSHUA P. KOLAR
UNITED STATES DISTRICT COURT
